**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-61-1** |
| **BRIAN AMERMAN** | : | |

## GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

The United States of America, by and through its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, Priya T. DeSouza, Assistant United States Attorney, and Meghan A. Farley, Special Assistant United States Attorney, submits this change of plea memorandum. A change of plea hearing for defendant Brian Amerman is currently scheduled for April 3, 2025.

### I.   INTRODUCTION

On February 15, 2024, a grand jury sitting in this District returned an Indictment charging the defendant (Brian Amerman) and two co-defendants with carjacking and aiding and abetting, in violation of 18 U.S.C. §§ 2119 and 2 (Count One), and brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Two). (Doc. 1.)

The charges stem from an armed carjacking that Amerman committed in the early hours of May 12, 2023. Counsel for Amerman has informed the government that Amerman intends to plead guilty to both Counts of the Indictment. There is no plea agreement.

## II.    ELEMENTS OF THE OFFENSES

### A.  Carjacking, 18 U.S.C. § 2119

To convict the defendant of carjacking, in violation of 18 U.S.C. § 2119 (Count One), the government must prove the following elements beyond a reasonable doubt:

(1)    That the defendant took a motor vehicle from the person or presence of another;

(2)    That the defendant took the vehicle by using force and violence or by acting in an intimidating manner;

(3)    That the defendant acted with intent to cause death or serious bodily harm; and

(4)    That the vehicle had been previously transported, shipped, or received in interstate or foreign commerce.

Modern Federal Jury Instructions – Criminal; Instruction 53 A-2 (2018).

### B.  Brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii)

To convict the defendant of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two), the government must prove the following elements beyond a reasonable doubt:

(1)    That the defendant committed the crime of carjacking as charged in Count One of the Indictment;

(2)    That during and in relation to the commission of that crime, the defendant knowingly brandished that firearm; and

(3)    That the defendant brandished the firearm during and relation to the crime of carjacking, meaning displayed all or part of the firearm, or otherwise made the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm was directly visible to that person.

2

Third Circuit Model Criminal Jury Instructions 6.18.924B (Apr. 2024); 18 U.S.C. § 924(c)(4);

*Dean v. United States*, 556 U.S. 568, 572-73 (2009).

### C.  Aiding and abetting, 18 U.S.C. § 2

Because the government has charged aiding and abetting in violation of 18 U.S.C. § 2 with respect to Counts One and Two, the defendant may be found guilty of those charges under the theory of aiding and abetting.

Thus, under the theory of aiding and abetting the carjacking in violation of 18 U.S.C. §§ 2119 and 2 as charged in Count One, the government must prove the following elements beyond a reasonable doubt:

(1)     That the defendant committed the offense of carjacking charged in the Indictment by committing each of the elements of carjacking;

(2)     That the defendant knew that carjacking as charged in the Indictment was going to be committed by the principal;

(3)     That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offense of carjacking as charged in the indictment and with the intent that the principal commit that specific offense; and

(4)     That the defendant performed an act in furtherance of the carjacking charged in the Indictment.

Third Circuit Model Criminal Jury Instructions 7.02 (Jan. 2024).

Under the theory of aiding and abetting the brandishing of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 as charged in Count Two, the government must prove the following elements beyond a reasonable doubt:

(1)     The defendant was an active participant in the offense of brandishing a firearm

during and relation to carjacking, as charged in the indictment, such that the defendant

knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or

encouraging the principal in committing the offense of brandishing a firearm during and

in relation to carjacking;

(2)     That the defendant committed the offense of brandishing a firearm during and

relation to carjacking by committing each of the elements of that offense; and

(3)     That the defendant knew in advance of the commission of brandishing a firearm

during and in relation to carjacking that the principal would brandish a firearm during and

in relation to carjacking.

Third Circuit Model Criminal Jury Instructions 6.18.924C (Apr. 2024).

## III.    MAXIMUM PENALTY

The statutory maximum penalty for Count One, carjacking and aiding and abetting in

violation of 18 U.S.C. §§ 2119 and 2, is 15 years' imprisonment, two years' supervised release, a

$250,000 fine, and a $100 special assessment. The statutory maximum penalty for Count Two,

brandishing a firearm during and in relation to a crime of violence and aiding and abetting, 18

U.S.C. §§ 924(c)(1)(A)(ii) and 2, is life imprisonment, with a mandatory minimum of seven

years' imprisonment consecutive to any other sentence imposed, five years' supervised release, a

fine of $250,000, and a $100 special assessment.

Thus, the total statutory maximum penalties are: life imprisonment with a mandatory

minimum of seven years' imprisonment consecutive to any other sentence imposed, seven years'

supervised release, a $500,000 fine, and a $200 special assessment.

**IV.     FACTUAL BASIS FOR THE PLEA**

If this case were to proceed to trial, the United States would prove, beyond a reasonable doubt, facts including, but not limited to, the following as to defendant Brian Amerman:

On May 12, 2023, in the early hours of the morning, victim J.F. parked their 2013 Nissan Murano with Pennsylvania license plate LVF5087 and VIN #JN8AZ1MW6DW312118 in a parking lot near to a standalone Bank of America ATM at 6587 Roosevelt Boulevard in Philadelphia, Pennsylvania. At approximately 12:53 a.m., J.F. exited the car and began depositing money into the ATM when Amerman, armed with a black and tan semi-automatic firearm with an extended magazine, and a second individual, exited a nearby parked car and approached J.F. As captured on the Bank of America ATM footage, Amerman displayed the firearm to J.F. and struck J.F. in the head with the firearm. Amerman wore a black hoodie with a large red circular emblem on the front, a mask covering his nose and mouth, orange and grey gloves, and grey and white sneakers.

Amerman and the second individual demanded J.F.'s car keys. J.F. provided the car keys and wallet, which contained J.F.'s bank cards and ID, to Amerman and the second individual. The second individual drove away in J.F.'s Nissan Murano. The car that Amerman had exited waited for Amerman to return. When Amerman approached the car, it began to back up so that Amerman could get into the car. Out of the Bank of America surveillance camera's range, Amerman entered that car. Surveillance video then shows the car drive away.

Approximately one hour later, a gray 2016 Honda Accord with Pennsylvania license plate KVT2268 pulled into the BP gas station at Oxford Circle (approximately 1.2 miles away from the Bank of America ATM). As shown on BP gas station surveillance video, the driver exited the Honda and Amerman, wearing the same clothing as he wore at the ATM, exited the

front passenger seat of the Honda. The two entered the BP gas station. Surveillance video shows a third individual remained in the back seat of the Honda. Amerman made a purchase using cash. Video shows Amerman no longer wearing gloves, and distinctive grey skull and bone tattoos are visible on his hands. The driver attempted to make a purchase using victim J.F.'s debit card. Bank records confirm that J.F.'s Wells Fargo card was declined at the BP gas station in Oxford Circle at approximately 2:02 and 2:03 a.m. on May 12, 2023 (approximately one hour and ten minutes after the carjacking).

On May 21, 2023, Philadelphia police investigating the May 12, 2023 carjacking of J.F. reviewed the surveillance footage and determined that the Honda Accord had been reported stolen. Police issued a patrol alert with for the Honda Accord that provided information for the Accord and that it was suspected to have been used in a crime. The following day, Philadelphia police officers observed the Honda Accord from the patrol alert and attempted to stop it. After a brief pursuit, the sole occupant crashed the Honda Accord on the 4300 block of Wingohocking Street. Police recovered the license plate from J.F.'s Nissan Murano in the trunk of the Honda Accord.

On August 9, 2023, law enforcement executed a search warrant on the residence of the driver who crashed the Honda Accord (who also appeared consistent with the person who drove the Honda Accord at the BP gas station on May 12, 2023 and attempted to use J.F.'s bank card). Law enforcement recovered, among other evidence, a black hoodie with large red circular emblem on the front. This hoodie is consistent with the hoodie that Amerman was observed wearing on May 12, 2023.

In the meantime, law enforcement had been monitoring Amerman's public Instagram account and observed photos of him that were consistent with the video of him from the Bank of

America ATM and the BP gas station the day of the carjacking. Additionally, law enforcement showed Amerman's juvenile parole officer the video from the BP gas station. Amerman's juvenile parole officer identified Amerman and his hand tattoos in that video. Law enforcement obtained a search warrant for Amerman's Instagram account. Amerman's Instagram account showed additional photos of him, including a photo of him on May 11, 2023 (the day before the carjacking) posing with a black and tan semi-automatic pistol with extended magazine that is consistent with the firearm that he struck J.F. with and wearing grey and white sneakers, consistent with the shoes that he was observed on video wearing on May 12. Amerman's Instagram account showed that approximately 24 hours after the May 12, 2023 carjacking of J.F., he posted a live video to his account that showed himself, wearing a mask that covered his nose and mouth, and another individual. In the video, Amerman pointed what appeared to be black and tan firearm at the camera, consistent with the one he was observed using on Bank of America surveillance footage on May 12, 2023.

Amerman's Instagram account also contained photos of him posing wearing orange and grey gloves, consistent with the gloves he was observed wearing on the Bank of America ATM footage on May 12. It contained a photo of what appeared to be that same black and tan firearm dated May 12, 2023 that shows the serial number of the firearm.

Through his Instagram account, Amerman sent a photo of a black and tan firearm to another Instagram account that is consistent with the photo of the firearm that contains the serial number, and consistent with the firearm that Amerman is seen holding in the Bank of America ATM surveillance video. Amerman wrote "I got a 9" referring to the photo that he sent. Law

enforcement examined the photo of the firearm that showed the serial number and determined it is real firearm, specifically a 9 mm Glock pistol with an extended magazine.

On May 24, 2023, Brian Amerman was arrested for the May 12, 2023 carjacking of J.F., as well as for other offenses. Amerman was *Mirandized* and interviewed. He identified himself and his tattoos in the BP gas station surveillance video from May 12, 2023.

In the course of Amerman's arrest, law enforcement recovered a receipt in Amerman's name from the Under Armour store at the Limerick Outlets in Pottstown dated May 18, 2023 (eight days after the carjacking of J.F.). Surveillance footage from that Under Armour showed Amerman and a second male shopping in the Under Armour. The second male wore what appeared to be the black hoodie with large red emblem on it that is consistent with the hoodie that Amerman was observed wearing on May 12, 2023 in the Bank of America ATM surveillance and the BP gas station surveillance. The Under Armour surveillance footage shows that Amerman wore grey and white sneakers that are consistent with the ones that he wore on May 12 and are consistent with ones that he wore when posing with the black and tan firearm in Instagram photos.

## V.    CONCLUSION

The United States respectfully submits that this summary of evidence provides a factual basis for the defendant's guilty plea. The United States respectfully requests that the Court accept his plea of guilty to the Indictment.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Priya T. De Souza*
PRIYA T. DE SOUZA
Assistant United States Attorney


*/s/Meghan A. Farley*
MEGHAN A. FARLEY
Special Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Change of Plea

Memorandum was served by electronic mail and electronic court filing (ECF) upon counsel.


_/s Meghan A. Farley_____
MEGHAN A. FARLEY
Special Assistant United States Attorney

Dated: April 3, 2025